IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01606-MJW

SIMAO PEDRO CATCHAI,

Plaintiff,

v.

JBS SWIFT GREELEY & CO,

Defendant.

---

## ORDER ON DEFENDANT'S MOTION TO DISMISS (Docket No. 20)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this Court for all purposes pursuant to the Court's Pilot

Program and 28 U.S.C. § 636(c) upon consent of the parties and the Order of Reference

Upon Consent to Jurisdiction of Magistrate Judge issued by Chief Judge Marcia S.

Krieger on September 15, 2015 (Docket Nos. 15 & 16).

Now before the Court is the Defendant's Motion to Dismiss (Docket No. 20).

Plaintiff filed a response (Docket No. 24) and defendant filed a reply (Docket No. 25).

The Court has reviewed the parties' filings.  The Court has further taken judicial notice

of the Court's entire file in this case and considered the applicable Federal Rules of Civil

Procedure, statutes, and case law.  Now being fully informed, the Court grants the

motion in part and denies the motion in part.

### Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

1

## **Allegations**[1]

Plaintiff, who proceeds in this matter pro se[2], brings claims against Defendant, his former employer, pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the Equal Pay Act. (Docket No. 1 at 1-2, 8-11.) He is an immigrant from Angola, a lawful resident, and authorized to work in the United States. (*Id.*) Plaintiff was hired by Defendant on October 7, 2013, and left his employment just over four months later on February 10, 2014. (*Id.* at 1, 7.) He was hired for the position of "drop wings" in the production area of the beef plant. (*Id.* at 3.) As a new hire, he wore a "gold hat" as a symbol of a "non qualified" employee. (*Id.* at 3-4.) He satisfactorily performed his job duties, and within thirty days, on or about November 6, 2014, he became a "qualified employee" because he had previous work experience from another beef plant as a Quality Assurance Technician. (*Id.* at 4.) Plaintiff was thus given a "white hat" as a

---

[1] For the purposes of considering the motion, the Court takes the following facts from the Complaint [#1]. The factual allegations in Plaintiff's Complaint are presumed true unless they are conclusory or contradicted by other, more specific allegations. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) ("conclusory and formulaic recitations" of the elements "are insufficient to survive a motion to dismiss"); *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 152 (2d Cir. 2014) (holding that "general allegations that are contradicted by more specific allegations in the Complaint" need not be accepted as true (quotation omitted)).

[2] A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

symbol of a "qualified employee," and his pay was raised from $13.95 per hour to

$14.04 per hour.  (*Id.*)

Employees with a "gold hat" can be switched and tried in different positions to see

in which position they best perform.  (*Id.*)  In addition, a new hire with a gold hat must

take orders from "seniors" at any time.  (*Id.*)  If there is a new opening, the new hire does

not have a right to bid for it.  (*Id.*)  The senior workers respect the qualified employees.

(*Id.*)  As a qualified employee, Plaintiff had the opportunity to bid for any preferable

position.  (*Id.*)  He bid for a quality assurance position and was told to wait until there

would be an opening in the quality assurance department.  (*Id.*)

Plaintiff was harassed by an Hispanic co-worker, Emilio Garcia, who was "backed

by a Hispanic supervisor Javier Villanova."  (Docket No. 1 at 2, 4.)  On or about

November 18, 2013, Plaintiff filed a complaint with the union representative.  (Docket

No. 1 at 4; Docket No. 1-3.)  About a week later, "defendant recklessly and intentionally

retaliated against the plaintiff for having filed a complaint with the Union Representative

against the employer" at the "Union's office located in the facility of the beef plant."

(Docket No. 1 at 2.)  On or about November 24, 2013, "the supervisor backed by the

floor manager Mirna, another Hispanic lady . . . recklessly and intentionally inflicted

emotional distress on the plaintiff in [a] humiliating manner."  (*Id.* at 4-5.)  More

specifically, "[t]hey stripped [Plaintiff] of his white hat as a retaliation because of the

complaint . . . .  They cut his working hours [and] . . . .  They exposed him to public

humiliation[,] mockery and subject[ed Plaintiff] to taking order[s] from seniors.  He was

humiliated by wearing [a] gold hat agin [sic]."  (*Id.* at 5.)  As a result of emotional

distress, the next day Plaintiff did not go to work and was treated at Centennial Mental

Health.  (*Id*. at 5.)

Plaintiff was removed from "Drop Wing to Tender Loin" and assigned a new position, "Tender pullers," the hardest in the production area.  (*Id*.)  He was given thirty days to qualify and was told failure to do so would result in termination of his employment.  (*Id*.)  "The employer knowingly [sic] it was the toughest job, the plaintiff would not be able to qualify or he would voluntarily quit[.]  However, he surprisingly beat all the odds and performed very well in less than three weeks."  (*Id*. at 5.)  At that time, the pay rate for that position was $16.15 per hour, but the "drop wing" rate of pay was $14.05 per hour.  (*Id*.)  "The employer had realized that they made a mistake to put the guy they didn't want to see around in a position to make good money."  (*Id*.)  Plaintiff was sent back to the "drop wing" position on December 17, 2013.  (*Id*. at 6.)  Plaintiff "was harassed in exchanged with the restitution of white hat [sic]."  (*Id*. at 6.)  On or about December 17, 2013, Plaintiff "filed a complaint with Human Resources of the company" which "addressed 'Discrimination treatment, Retaliation, and Hostile work environment.'" (Docket No. 1 at 5-6.)  "As a condition the the [sic] plaintiff was removed and sent back again to drop wings where he was harassed in exchange with the restitution of white hat."  (Docket No. 1 at 6.)  Brendan, the Human Resource delegate told plaintiff he had no choice.

On December 23, 2013, plaintiff decided to file a grievance with the union.  (Docket No. 1 at 4, 6 & Docket No. 1-4).  After doing so, the manager "implemented new strategies," namely, assigning another employee to be involved with part of plaintiff's job duties.  (Docket No. 1 at 6-7.)  That co-worker was not performing the job correctly and Plaintiff was being blamed for it.  (*Id*. at 7.)  Plaintiff asked his supervisor to intervene,

4

but nothing happened. (*Id.*) After Plaintiff complained, the co-worker threw a large piece of fat at Plaintiff, causing pain when it struck on the side of Plaintiff's head. (*Id.*) When Plaintiff complained about the fat-throwing incident, the manager admitted it was her fault because she did not include Plaintiff in a meeting about a change she made. (*Id.*) Nothing was done in response to Plaintiff's complaint to his manager. (*Id.*) The co-worker was not punished and the policy of zero tolerance for violence in the workplace was not enforced. (*Id.*) As a result, Plaintiff tendered his resignation on February 10, 2014. (*Id.*) Plaintiff "had no other choice." (*Id.*)

Prior to his resignation, on or about January 3, 2014, Plaintiff applied for a quality assurance position. Plaintiff had an interview with quality assurance manager Justin and was called for a second interview with Justin and Lucy, another quality assurance manager, in the presence of Irene, a Human Resources hiring manager. They were all "without a shadow of doubt impressed by his experience." (*Id.* at 6.) Plaintiff was told "he would be placed on January 28, 2014." (*Id.*) A Hispanic female from outside the company was placed in that job. (*Id.*)

Plaintiff alleges that Defendant's treatment of him constitutes discrimination based on race and national origin, and retaliation in violation of Title VII, Section 1981, and the Colorado Anti Discrimination Act. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 29, 2014. (*Id.* at 2.) Plaintiff received a right to sue letter, dated June 8, 2015, from the EEOC. (Docket No. 1-2.) Plaintiff raises the following claims for relief: (1) a Title VII violation based upon defendant recklessly and intentionally discriminating against plaintiff who is black and from Angola, Africa; (2) a claim that Defendant retaliated "against plaintiff for having filed

5

a complaint with the Union representative of the employees" by stripping him of his white hat, violating the Union contract, exposing plaintiff to public humiliation, mockery, and subject to taking orders from seniors, cutting plaintiff's hours, denying plaintiff's promotion, and urging another co-worker to assault plaintiff, in violation of Title VII; (3) a Title VII claim alleging that Plaintiff was subject to a hostile work environment and denied a promotion; (4) a claim brought under the Equal Pay Act ("EPA"), 29 U.S.C. § 206, and 42 U.S.C. § 1981 because Plaintiff was paid $14.05 per hour when he worked in the position "tender loin" from November 24 to December 17, 2013, and should have been paid $16.15 per hour; and (5) a claim that Plaintiff was demoted, harassed, and subject to unfair terms and conditions of employment due to his national origin (he would not have received such different treatment if he was Hispanic or American).

### The Motion

In the motion, Defendant argues that each of Plaintiff's claims is subject to dismissal pursuant to Fed. R. Civ. P. 12.[3] Defendant avers that the Court lacks jurisdiction over Plaintiff's retaliation claim because the National Labor Relations Board has primary jurisdiction over the claim. Defendant further argues that Plaintiff's Title VII and Section 1981 claims fail because Plaintiff did not suffer an adverse employment action. Specifically, Defendant maintains that neither wearing a gold hard hat nor being temporarily assigned to a new position constitute adverse employment actions. With

---

[3] In support of the motion, filed under Rule 12, Defendant submits a variety of exhibits, including a collective bargaining agreement (Docket Nos. 20-1, 20-2 & 20-3), the Declaration of Kelly Johnson (Docket No. 20-4), and Plaintiff's earnings vouchers (Docket No. 20-5). However, the Court cannot consider these documents without converting the motion into a Rule 56 motion. The Court did not convert this motion into a Rule 56 motion, as a result, the Court does not consider these exhibits.

regard to Plaintiff's allegation that he was not selected for a quality assurance position, Defendant argues that Plaintiff was not qualified for the position.  Defendant also argues that Plaintiff's hours were not reduced in retaliation for his complaint to his union. Defendant further argues that Plaintiff was not constructively discharged from his job. Regarding Plaintiff's hostile work environment claim, Defendant maintains that the alleged harassment was not so severe or pervasive as to alter the terms and conditions of his employment.  Finally, Defendant argues that Plaintiff's EPA claim fails because he does not allege that he suffered any discrimination based on his sex or gender.

Notably, Plaintiff's response includes additional factual allegations.  However, the Court cannot consider these additional factual allegations when determining whether the motion should be granted because the Court is limited to the allegations in the Complaint.  This is because the purpose of a motion to dismiss brought pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

**Standard of Review**

Defendant moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6).  As stated by then-Chief Judge Babcock in 2001:

> Rule 12(b)(1) empowers a court to dismiss a complaint for lack of
> jurisdiction over the subject matter.  As courts of limited jurisdiction,
> federal courts may only adjudicate cases that the Constitution and
> Congress have granted them authority to hear.  Statutes conferring
> jurisdiction on federal courts are to be strictly construed.  A Rule 12(b)(1)
> motion to dismiss must be determined from the allegations of fact in the
> complaint, without regard to mere conclusionary allegations of jurisdiction.
> The burden of establishing subject matter jurisdiction is on the party
> asserting jurisdiction.
>
> . . . [I]f a party attacks the facial sufficiency of the complaint, the court
> must accept the allegations of the complaint as true.

*Cherry Creek Card & Party Shop, Inc. v. Hallmark Mktg. Corp.*, 176 F. Supp. 2d 1091,

1094-95 (D. Colo. 2001) (internal citations, quotation marks, and alterations omitted).

The Tenth Circuit has recently explained the standard under Rule 12(b)(6):

> To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain
> enough allegations of fact, taken as true, to state a claim to relief that is
> plausible on its face.  Disregarding conclusory statements, the remaining
> factual allegations must plausibly suggest the defendant is liable.  A claim
> for relief is plausible when the plaintiff pleads facts adequate to draw a
> reasonable inference that the defendant is liable for the alleged
> misconduct.  Such facts must raise a right to relief above the speculative
> level.

*McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014) (internal citations, quotation

marks, and alterations omitted).

**Analysis**

***Retaliation Claim***

Plaintiff alleges that Defendant retaliated against him after he filed a grievance

with his union.  (Docket No. 1 at 2.)  Filing a grievance under a collective bargaining

agreement constitutes protected union activity under § 7 of the National Labor Relations Act ("NLRA").  *NLRB v. U.S. Postal Service*, 906 F.2d 482, 486 (10th Cir. 1990). Generally, federal courts do not have jurisdiction over suits directly involving activity subject to § 7 of the NLRA.  Rather, the courts must defer to the National Labor Relations Board ("NLRB").  *San Diego Bldg. Trades Council, Millme's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244-245 (1959).  Preemption by the NLRA occurs, inter alia, where "the conduct at issue is subject to the unfair labor practice jurisdiction of the [NLRB]."  *Peabody Galion v. Dollar*, 666 F.2d 1309, 1314 (10th Cir. 1981) (citations omitted).  Activities that are arguably protected by section 7 or prohibited by section 8 of the NLRA must be determined "in the first instance [by] the [NLRB]."  *Garmon*, 359 U.S. at 244-245.  This preemption doctrine is premised on Congress' desire to avoid conflicting rules of substantive law and remedy, thereby ensuring a consistent national labor policy.  *Id.* at 242.  Therefore, to the extent Plaintiff's second claim for relief alleges retaliation in response to a grievance filed with Plaintiff's union, this claim must be dismissed for lack of subject matter jurisdiction.  *See Silchia v. MCI Telecomms. Corp.*, 942 F.Supp. 1369, 1377 (D. Colo. 1996).

Plaintiff also alleges that he complained to a manager about another worker "throwing a large piece of fat at" him.  (Docket No. 1 at 7.)  Plaintiff maintains that as a result of nothing being done about this complaint, he quit his job.  (*Id.*)  However, Plaintiff does not allege that he was retialated against in anyway relating to this complaint about his co-worker.  As a result, the Court does not read into the Complaint a retaliation claim brought against Defendant that is distinguishable from the retalaition claim that is governed by the NLRB.  *See, e.g., Perkins v. Fed. Fruit & Produce Co.,*

*Inc.*, 861 F.Supp.2d 1285, 1290-91 (D. Colo. 2012).  Therefore, no retaliation claim

alleged by Plaintiff can proceed in this case because the Court does not have subject

matter jurisdiction over any such claim.

**Title VII and Section 1981**

Plaintiff brings a claim under Title VII and Section 1981 for racial discrimination,

alleging that he was discriminated against because he is black and from Angola.

(Docket No. 1 at 1, 8.)  Plaintiff also brings a hostile work environment claim under Title

VII and states that he was denied a "job promotion in a position [for which] he was fully

skilled and qualified."  (*Id.* at 9.)  Under Title VII, an employer may not discriminate on

the basis of race, color, religion, sex, or national origin, or take adverse action against

an employee who has engaged in protected conduct.  *Khalik v. United Air Lines*, 671

F.3d 1188, 1192 (10th Cir. 2012); *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998

(10th Cir. 2011).  Section 1981 "declares that all persons 'shall have the same right . . .

to make and enforce contracts . . . as is enjoyed by white citizens' [and] prohibits not

only racial discrimination but also retaliation against those who oppose it."  *Univ. of*

*Texas Southwestern Med. Cntr. v. Nassar*, 133 S.Ct. 2517, 2530 (2013) (quoting

*CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008)).

Racial Discrimination

Because Plaintiff does not allege any direct evidence of discrimination, his Title

VII and § 1981 claims are analyzed under the burden-shifting framework enumerated in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Bird v. Regents of New*

*Mexico State Univ.*, 619 F.App'x 733, 741 (10th Cir. 2015); *Baca v. Sklar*, 398 F.3d

1210, 1218 n.3 (10th Cir. 2005).  A plaintiff bears the initial burden to establish a prima

10

facie case for discrimination. *Id.* Once a prima facie case is established, the burden

shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse

employment action. *Id.* If the defendant does so, the burden returns to the plaintiff to

demonstrate that the defendant's proffered reason is pretextual. *Id.* In the motion,

Defendant argues that Plaintiff fails to establish a prima facie case under Title VII as to

each claim. Accordingly, the burden does not shift to Defendant in the context of the

Court's analysis herein because Defendant does not offer a legitimate,

nondiscriminatory reason for the alleged adverse employment action.

> As the Tenth Circuit recently summarized:

> "[T]he articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). Generally, to make out a prima facie case of discrimination, a plaintiff must demonstrate "that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

*Bird*, 619 F.App'x at 741-42.

To determine if Plaintiff suffered an adverse employment action, the Court must

look at the facts of the individual case. *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847,

857 (10th Cir. 2000). "An adverse employment action includes acts that constitute a

significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits." *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (internal quotation marks omitted).  Although "an adverse employment action is not limited to such acts . . . we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." *Id.*; *Sanchez*, 164 F.3d at 532 (citation omitted).  "[A] plaintiff must [always] show that the alleged adverse action caused more than de minimis harm to or a de minimis impact upon an employee's job opportunities or status." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011).  "Acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects may be considered adverse actions . . . ." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004).

### Reassignment From "Tender Loin" to "Drop Wings"

Plaintiff alleges that he "was humiliated by wearing [a] gold hat agin [sic]." (*Id.* at 5.)  This change of hard hat color, according to Plaintiff's allegations, was related to his reassignment from the "tender loin" position to the "drop wings" position on the meat processing line.  (Docket No. 1 at 5-6.)  Plaintiff's allegations relating to this change of assignment show that this involved the processing of different portions of the carcass and that this change resulted in lower pay.  (*Id.* at 5.)  Specifically, Plaintiff alleges that the "tender loin" position paid $16.15 per hour and the "drop wing" position paid $14.05 per hour.  (*Id.*)  This factual allegation is sufficient for Plaintiff to meet the second element—showing that he suffered an adverse employment action.  *Duvall v. Putnam Cnty. Sch. Dist., Ind. Sch. Dist. No. 1 of Okla. Cnty.*, 530 F.App'x 804, 811 (10th Cir. 2013) (finding that reassignment to a teaching position that resulted in a five percent decrease in pay constituted an adverse employment action).

12

Therefore, the Court next considers whether Plaintiff has sufficiently alleged that this adverse employment action "took place under circumstances giving rise to an inference of discrimination." *PVNF, L.L.C.*, 487 F.3d at 800. Plaintiff's factual allegations relating to this reassignment do not tie the reassignment to any issues relating to his race or national origin. While Plaintiff does allege that a Hispanic co-worker harassed him on or about November 24, 2013, he does not allege that this harassment related to his race. (Docket No. 1 at 4-5.) In fact, Plaintiff does not provide any detailed allegations relating to the alleged harassment. Plaintiff does state that he sought mental health treatment on November 25, 2013. (*Id.* at 5.) Plaintiff's next allegation is that he was reassigned to the "drop wing" position. (*Id.*) However, none of these allegations are tied in any way to Plaintiff's race. As a result, Plaintiff fails to state a claim of racial discrimination under either Title VII or Section 1981 relating to the reassignment from "tender loin" to "drop wing."

### Constructive Discharge

Next, the Court turns to Plaintiff's resignation. In this case, Plaintiff voluntarily quit his job. (Docket No. 1 at 7.) He alleges that he "had no other choice . . . ." (*Id.*) In short, Plaintiff's argument is that he was forced to quit his job. The Court refers to this as constructive discharge. In order to establish a claim for constructive discharge on the basis of discrimination or hostile work environment, a plaintiff must show that "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sanchez v. Denver Pub. Schools*, 164 F.3d 527, 534 (citing *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986)); *see also Pennsylvania State Police v. Suders*, 542 U.S. 129, 147

(2004).  "There is no mathematically precise test of what is intolerable."  *Hogue v. MQS Inspection, Inc.*, 875 F.Supp. 714, 723 (D.Colo. 1995).  Courts must examine all of the circumstances, including: (1) frequency of the conduct; (2) severity; (3) whether it is physically threatening or humiliating; and (4) whether it unreasonably interferes with an employee's work performance.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). A plaintiff must show that discrimination or harassment made the job so unbearable that his only reasonable option was to resign.  *See Sanchez*, 164 F.3d at 534; *see also Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir. 2004).  Furthermore, the standard for constructive discharge is objective, "an employee's subjective feelings or beliefs are not relevant in a constructive discharge claim."  *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 858 (10th Cir. 2000).

In this case, Plaintiff alleges that he was forced to wear a different colored hard hat that resulted in "mockery and subject[ed him] to taking order[s] from seniors." (Docket No. 1 at 5.)  Plaintiff further alleges that when he was "sent again to drop wings . . . he was harassed in exchange with the restitution of white hat." (*Id.* at 6.)  Co-worker hostility or retaliatory harassment may be an "adverse employment action" if it is sufficiently severe.  *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998).  However, the mocking Plaintiff alleges in this case does not amount to harassment or discrimination that left him no choice but to resign.  While the mocking and lack of respect may have offended Plaintiff, these "working conditions [were not] so difficult that a reasonable person in the employee's position would feel compelled to resign."  *Sanchez*, 164 F.3d at 534; *see also Tran v. Trustees of State Colls. in Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004) ("The question is not whether the employee's

14

resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions."); *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) ("The bar is quite high in such cases: a plaintiff must show he had no other choice but to quit." (citing *Sanchez*, 164 F.3d at 534)).  As a result, the Court concludes that Plaintiff fails to state a claim of racial discrimination under either Title VII or Section 1981 based on a theory of constructive discharge.

### Fat Throwing Incident

Further, the incident in which a co-worker threw a piece of fat at Plaintiff is not linked to harassment or discrimination.  Plaintiff's allegations surrounding this incident establish that this co-worker was angry because Plaintiff "asked the supervisor to stop" the co-worker, the supervisor did nothing, and Plaintiff tried to stop the co-worker from improperly doing his job.  (Docket No. 1 at 7.)  This incident is not tied in any way to Plaintiff's race and is a one-off incident.  While co-worker hostility or retaliatory harassment may be an "adverse employment action" if it is sufficiently severe, this incident does not meet the threshold of severity.  *Gunnell*, 152 F.3d at 1264.  This incident is more akin to the type of "petty slights" the Supreme Court discussed in *Burlington Northern* that do not constitute the type of retaliation that can support a Title VII claim.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).   As a result, Plaintiff fails to state a claim of racial discrimination under either Title VII or Section 1981 based on this incident.

Failure to Promote

Plaintiff also alleges that he applied for a quality assurance position on January 3, 2014, and was told that "he would be placed on January 28, 2014, [b]ut he was never placed in the position." (Docket No. 1 at 6.)  Plaintiff further alleges that "a Hispanic female was placed in the position . . . ." (*Id.*)  To prevail on a Title VII failure to promote claim, a plaintiff must first establish a prima facie case by showing that "(1) he is a member of a protected class; (2) he applied for and was qualified for the particular position; (3) he was not promoted despite his qualifications; and (4) the position was filled or remained open after he was rejected." *Cross v. The Home Depot*, 390 F.3d 1283, 1286 (10th Cir. 2004).

Plaintiff alleges that he "is a black immigrant from Angola," he "applied for a quality assurance position," the people interviewing him for the position "were without a shadow of doubt impressed by his experience," "[h]e was told that he would be placed on January 28, 2014," Plaintiff "was never placed in the position," and "a Hispanic female was placed in the position . . . ." (Docket No. 1 at 1, 6.)  These allegations are sufficient to allege the first, third, and fourth elements of a prima facie failure to promote claim.  The question is whether Plaintiff has sufficiently alleged that he was qualified for the quality assurance position.[4]  "The relevant inquiry at the prima facie stage is not whether an employee or potential employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that

_____

[4] Defendant attacks this claim be submitting a declaration of an employee discussing the qualifications necessary for this position.  However, the Court has not converted this motion into a Rule 56 motion and, therefore, does not consider the declaration.

16

[he] possesses the objective qualifications necessary to perform the job sought."

*E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194 (10th Cir. 2000).

Plaintiff alleges that he worked at a Cargill meat processing plant in Fort Morgan,

Colorado "where he worked in the past as a Quality Assurance Technician." (Docket

No. 1 at 4.)  While Plaintiff does not allege that the qualifications for the same job at the

two different meat processing plants were identical, construing Plaintiff's allegations in

the light most favorable to Plaintiff, as the Court must, the Court concludes that Plaintiff

has carried his de minimis burden to show that he was qualified for the position at this

early stage in the proceeding.  *Gibson v. Mabrey Bank*, No. 14-cv-0770-CVE-FHM,

2015 WL 5098698, at *6 (N.D. Okla. Aug. 31, 2015).  As a result, the Court concludes

that Plaintiff's failure to promote claim is sufficiently alleged and does not dismiss this

claim.  However, the Court also notes that, to the extent Defendant would like to renew

its arguments based on the declaration submitted to the Court or any other evidence the

Court did not consider when deciding this motion brought under Rule 12, Defendant

may file a Rule 56 motion.

<u>Hostile Work Environment</u>

Plaintiff's hostile work environment claim fails for the same reason as his racial

discrimination claim.  However, the Court also notes that the minor and sporadic

incidents alleged by Plaintiff—even with all reasonable inferences drawn in Plaintiff's

favor—do not rise to the level of harassment necessary to state a claim.  *Tademy v.*

*Union Pac. Corp.*, 614 F.3d 1132, 1138 (10th Cir. 2008) (claim requires "discriminatory

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment");

17

*MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005).  "[A] plaintiff

must show that the environment was both objectively and subjectively hostile or

abusive."  *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (citation

omitted).  As the Tenth Circuit summarized, the Court must

> assess "the objective severity of the harassment from the perspective of a
> reasonable person in the plaintiff's position, considering all the
> circumstances." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir.
> 2007) (emphasis added). In other words, we must look to a "totality of the
> circumstances," and "consider[ ] such factors as 'the frequency of the
> discriminatory conduct; its severity; whether it is physically threatening or
> humiliating, or a mere offensive utterance; and whether it unreasonably
> interferes with an employee's work performance.'" *Chavez v. New Mexico*,
> 397 F.3d 826, 832-33 (10th Cir. 2005) (quoting *O'Shea v. Yellow Tech.
> Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)); *accord Billings v.
> Town of Grafton*, 515 F.3d 39, 48 (1st Cir. 2008). "[T]hat [objective] inquiry
> requires careful consideration of the social context in which particular
> behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81,
> 118 S.Ct. 998. "Conduct which is considered normal and appropriate in
> one setting may be deemed abusive or hostile in another." *EEOC v.
> Fairbrook Med. Clinic, PA*, 609 F.3d 320, 328 (4th Cir. 2010).

*Morris*, 666 F.3d at 664.  The specific factual conduct alleged by Plaintiff shows nothing

more than mocking by co-workers, a co-worker who was difficult to work with, and one

incident when a co-worker threw a piece of fat at Plaintiff.  These incidents do not rise to

the level of a hostile work environment.

### Equal Pay Act

Plaintiff's fourth cause of action purports to be brought under the Equal Pay Act

("EPA").  (Docket No. 1 at 10.)  The EPA prohibits wage discrimination "between

employees on the basis of sex . . . for equal work on jobs the performance of which

requires equal skill, effort, and responsibility, and which are performed under similar

working conditions." 29 U.S.C. § 206(d)(1).  To establish a prima facie case of pay

discrimination under the EPA, a plaintiff must demonstrate that: "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances." *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997) (citation omitted).  In this case, Plaintiff is male and offers no factual allegations of any gender-based discrimination in pay.  As a result, Plaintiff fails to state a claim under the EPA.

### Conclusion

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Docket No. 20) is GRANTED in part and DENIED in part.  It is further ORDERED that Plaintiff's claims are dismissed as follows: Plaintiff's retaliation claim is dismissed for lack of subject matter jurisdiction; Plaintiff's Title VII and 42 U.S.C. § 1981 claims of racial discrimination and hostile work environment are DISMISSED without prejudice;[5] and Plaintiff's Equal Pay Act claim is DISMISSED with prejudice.  Plaintiff's only remaining claim is his Title VII failure to promote claim.

Date:  March 10, 2016                    s/ Michael J. Watanabe
       Denver, Colorado                  Michael J. Watanabe
                                         United States Magistrate Judge

---

[5]  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice . . . .") (citations omitted); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should not attach to a dismissal when a plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

19